*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0096p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

FRANCISCO RAMIREZ-CANALES (05-4504); JOSE
LUIS GARCIA CORREA (06-3990),

                     *Petitioners,*

     *v.*

MICHAEL MUKASEY,

                     *Respondent.*

Nos. 05-4504; 06-3990

>

On Appeal from the Board
of Immigration Appeals.
Nos. A78 145 159; A78 121 520.

Argued: October 23, 2007

Decided and Filed: February 27, 2008

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Jennifer M. Rotman, IMMIGRANT LAW GROUP, Portland, Oregon, for Petitioners. Charles E. Canter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Jennifer M. Rotman, Jessica M. Boell, Stephen W. Manning, IMMIGRANT LAW GROUP, Portland, Oregon, Ronald Kaplovitz, KAPLOVITZ & ASSOCIATES, Sylvan Lake, Michigan, Mayra Fe Lorenzana-Miles, Brian J. Miles, D'LUGE, MILES, MILES & CAMERON, Mount Clemens, Michigan, for Petitioners. Charles E. Canter, Jeffrey J. Bernstein, Michelle Gorden Latour, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

## OPINION

─────────────

     BOYCE F. MARTIN, JR., Circuit Judge. Francisco Ramirez-Canales and Jose Luis Garcia Correa both appeal the decision by the Board of Immigration Appeals to reject their application for adjustment of status. Subsequent to oral argument before this panel, the Board of Immigration Appeals issued a precedential interpretation of the statutes in question. We now defer to this interpretation and AFFIRM the Board's decision denying the petitioners adjustment of status. However, we REMAND the case of Ramirez-Canales for consideration of equitable relief *nunc pro tunc*.

I

Francisco Ramirez-Canales is a citizen of Mexico who came to the United States in 1996 and married an American citizen in 1998. They now have one son. In 2000, his wife filed a Petition for Alien Relative I-130 to obtain a visa for her husband. Before the petition was granted, he was ordered to depart the country or face deportation. The petition was subsequently granted on January 17, 2002. However, under the order of voluntary departure, Ramirez-Canales had to leave by January 23, 2002. As he was unable, during that six-day window, to have his case heard, he departed as ordered on January 23, but returned illegally a week later. After his return, the INS (now ICE) sent notice that he was in violation of 8 U.S.C. § 1182(a)(6) (entering without inspection), and (a)(9) (reentering alien who, prior to reentry, had been unlawfully present for an aggregate of greater than one year). At his hearing, Ramirez-Canales admitted to the charges, but asked for an adjustment of status under 8 U.S.C. § 1255(i), which allows some aliens illegally present to apply from within the United States to become legal, since he was the beneficiary of an approved visa petition. After receiving briefs, the immigration judge ruled against Ramirez-Canales, stating that he was inadmissible under § 1182(a)(9)(C)(i)(I), and therefore barred from adjusting his status under § 1255(i) since that section requires that an alien be admissible. Ramirez-Canales appealed to the Board of Immigration Appeals, which adopted the opinion of the immigration judge and affirmed.

Jose Garcia Correa was born in Mexico and unlawfully entered the United States in 1994. In 2000, Garcia Correa married Margaret Anne Garcia, a United States citizen. He returned to Mexico in January 2001 when his mother died, and subsequently re-entered the United States in February 2001. In March of 2001 the INS filed a Notice to Appear charging that Garcia Correa was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), "as an alien present in the United States without being admitted or paroled." On September 4, 2002, the petition for an Alien Relative visa I-130 was approved. At the removal hearing, Garcia Correa admitted the charge against him, but sought to adjust his status under § 1255(i). After a number of preliminary hearings, the immigration judge denied his motion, finding him inadmissible under § 1182(a)(9)(C)(i)(I), and therefore disqualified from § 1255(i).

II

This Court reviews questions of law concerning immigration proceedings *de novo*. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). We owe deference to an agency's reasonable interpretation of its empowering statutes when those are ambiguous. *See Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The Supreme Court has held that *Chevron* deference to the Board's interpretation of immigration statutes is appropriate. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

*A. Adjustment of Status*

The two statutes in this case serve conflicting goals. Section 1182(a) lists a number of bases that render an alien inadmissible to this country. Section 1255(i) allows aliens who entered without inspection but who have access to a visa (typically an immigrant spouse of a citizen) to legalize their status without leaving the country and incurring a long and needless separation from their family, as would otherwise be required.[1] Both Ramirez-Canales and Garcia Correa raise the same question:

---

[1]Typically an alien who obtains a visa must apply for legal status from the United States embassy in his or her country of origin. Thus, if an alien is illegally present in the United States at the time he or she receives a visa, she must first leave the United States and apply from her home country, and then reenter the United States. For spouses of United States citizens, this would entail a long and needless separation. Thus § 1255(i) was passed for "spouses, children, parents and siblings of permanent residents or U.S. citizens...to adjust their status in the U.S. and avoid needless

does § 1255(i), which allows adjustment of status, provide an exception to the grounds for inadmissibility listed in § 1182(a)?  Section 1182(a), "Classes of aliens ineligible for visas or admission," states:

(a) Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
     (6) Illegal entrants and immigration violators
        (A) Aliens present without admission or parole
            (i) In general.  An alien present in the United States without being admitted or paroled or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.
     (9) Aliens previously removed
        (C) Aliens unlawfully present after previous immigration violations
            (i) In general.  Any alien who –
                (I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or
                (II) has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law,
            and who enters or attempts to reenter the United States without being admitted is inadmissible.

On its face, the statute renders both petitioners inadmissible: both have entered the United States without being admitted, in violation of (a)(6), and both have reentered after remaining unlawfully present in the United States for more than one year, in violation of (a)(9)(C)(i).

Both have also applied for adjustment of status under 8 U.S.C. § 1255, which states:

(i) Adjustment of status of certain aliens physically present in the United States
     (1) ...an alien physically present in the United States –
        (A) who –
            (i) entered the United States without inspection; ...
        may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence...
     (2) Upon receipt of such an application...the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if--
        (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and
        (B) an immigrant visa is immediately available to the alien at the time the application is filed.

Because § 1255(i)(2)(A) requires that an alien be admissible, it would appear that petitioners are disqualified as a result of their § 1182(a)(6) and (a)(9) violations. Petitioners urge, and we agree, that such a reading is inconsistent with the overall statutory scheme.  By its express language, § 1255(i)(1)(A)(i) applies to aliens who "entered the United States without inspection." If all aliens unlawfully present are inadmissible as a result of § 1182(a), and admissibility is a condition for § 1255(i)(2)(A) relief, then no one would ever be eligible under § 1255(i)(2)(A).[2]

---

separation from their loved ones."  146 Cong. Rec. S11850-02 (daily ed. Dec. 15, 2000) (statement of Sen. Kennedy).

[2]Note that "inspection" is required for admission, and therefore an alien who entered without inspection cannot have been admitted.  *See* 8 U.S.C. § 1101(a)(13)(A).  Thus the contradiction between the statutes holds despite the use of "inspection" in § 1255(i) and "admission" in § 1182(a)(6).

Since in resolving this conflict the terms of these statutes are amenable to multiple interpretations, we turn to the agency's own interpretation of its empowering statutes. "The BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *Aguirre-Aguirre*, 526 U.S. at 425 (internal quotations and citations omitted). In a recent opinion, the Board of Immigration Appeals has directly addressed the relationship between § 1182(a) and § 1255(i). *See In Re Alonzo Briones*, 24 I&N Dec. 355 (BIA 2007). As a precedential opinion,[3] *Briones* is the type of case-by-case adjudication giving meaning to ambiguous statutes to which we owe deference. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). We therefore review the Board's interpretation for reasonableness. *See Chevron*, 467 U.S. at 845.

The Board took up the issue of "whether adjustment of status under section [1255(i)] of the Act is available to an alien who is inadmissible to the United States under section [1182(a)(9)(C)(i)(I)] of the Act." *Briones*, 24 I&N Dec. at 357. After recognizing the conflict in the statutory language described above, the Board acknowledged that § 1255(i) must provide an exception to § 1182(a)(6), but only because § 1255(i) would otherwise be rendered superfluous:

> In our view, section [1255(i)] adjustment remains available to aliens inadmissible under section [1182(a)(6)(A)(i)] only because a contrary interpretation would render the language of section [1255(i)] so internally contradictory as to effectively vitiate the statute, an absurd result that Congress is presumed not to have intended.

*Id.* at 365. The Board then distinguished § 1182(a)(6) from § 1182(a)(9)(C)(i)(I): though both penalize illegal presence, § 1182(a)(9)(C)(i)(I) "applies only to that subset of such aliens who are *recidivists*, that is, those who have departed the United States after accruing an aggregate period of 'unlawful presence' of more than 1 year and who *thereafter* entered or attempted to reenter the United States unlawfully." *Id.* at 365-66 (emphasis in original). As a result of this distinction, not all of those covered by the language in § 1255(i) – entry without inspection – are rendered inadmissible by § 1182(a)(9)(C)(i)(I): so long as an alien enters illegally only *once*, she is not inadmissible, and may apply for adjustment.[4] Because there is no direct conflict, the Board found that § 1255(i) does not provide any exception to § 1182(a)(9)(C)(i)(I). *Id.* at 370-71. Finally, the Board noted that § 1182(a)(9)(C)(i)(I) and § 1182(a)(9)(C)(i)(II) cannot be distinguished, and therefore both preclude § 1255(i) adjustment. *Id.* at 367.

The Board further supported its reasoning with legislative history and analysis of other provisions of the Act. It pointed out, for example, that adjustment of status was originally limited to aliens legally admitted to the United States. *Id.* at 359. This system, which was designed to encourage aliens to apply from their home country through the consulate, faced a crisis after more than two and a half million aliens were legalized by statute in 1986. *Id.* Family members of those legalized aliens were forced to leave the country in order to apply for a visa from their home countries. *Id.* To relieve this strain and allow families to stay together, Congress passed § 1255(i), extending the ability to apply for legal status to those illegally within the country. But it included a sunset provision since it was designed to alleviate this unique crisis. *See id.* at 360. Though the sunset provision was effectively extended multiple times, the nature of the provision remains limited to dealing with the particular problem of aliens who will likely obtain visas being forced into long and expensive separations from their families while they apply through their home consulates. This history supports a reading of the statute that allows aliens illegally present to apply, but does not

---

[3] *See* 8 C.F.R. §1003.1(g).

[4] Petitioners argue that the Board ignored § 1255(i)(1)(A)(ii) and therefore its interpretation is unreasonable. That section addresses certain types of status violations, but it does not directly conflict with § 1182(a)(9)(C)(i)(I) since the alien must accumulate more than one year of illegal status, and must reenter the country to trigger inadmissibility.

allow those who have left and reentered the country to apply: an alien who leaves the country is no longer within that class of persons that the statute was originally designed to aid.

We cannot say that the Board's conclusions were unreasonable in light of its careful and well-supported arguments. We therefore owe deference to the Board's interpretation. *See Aguirre-Aguirre*, 526 U.S. at 425. Accordingly, we find that both Ramirez-Canales and Garcia Correa are inadmissible under § 1182(a)(9)(C)(i)(I) due to their illegal reentry into this country after accruing greater than one year of illegal presence. Because they are inadmissible, and because § 1255(i)(1)(A)(i) does not provide an exception, they cannot now adjust their status under § 1255(i).

### B. *Relief* nunc pro tunc

Ramirez-Canales makes an additional argument that he is entitled to relief under § 1255(i) *nunc pro tunc*. *Nunc pro tunc* relief is an equitable power to grant an order now as if it were granted sometime in the past. *Edwards v. INS*, 393 F.3d 299, 308 (2d Cir. 2004). In *Patel v. Gonzales*, 432 F.3d 685, 693 (6th Cir. 2005), this Court explained:

> A *nunc pro tunc* order is an order that has retroactive legal effect. The BIA has long used *nunc pro tunc* orders to remedy the harshness of United States immigration laws. Among other uses, the BIA has issued *nunc pro tunc* orders to retroactively legalize an alien's admission into the United States thereby eliminating the grounds for deporting the alien.

(internal citations omitted). As an equitable power, its scope is broad, and should be applied as justice requires so long as it is not barred by statute. *Edwards*, 393 F.3d at 310.

While the equitable power to grant orders *nunc pro tunc* is conceptually broad, its actual application by the Board appears to be limited to two general situations. First, the Board uses the power to retroactively grant the Attorney General's discretion to permit an alien to reapply for admission after being deported and subsequently reentering the country. *See, e.g., In re Felipe Garcia-Linares*, 21 I. & N. Dec. 254 (BIA 1996); *Matter of Rapacon,* 14 I&N Dec. 375 (R.C. 1973)*; In the Matter of S----- N-----* 6 I. & N. Dec. 73 (BIA 1954); *In the Matter of L-----* 1 I. & N. Dec. 1 (A.G. 1940). Second, the Board uses the power to apply the law as it existed at the time of the violation instead of current law. *See Patel v. Gonzales*, 432 F.3d 685, 693 (6th Cir. 2005)*; Matter of T*, 6 I. & N. Dec. 410, 413-14 (BIA 1954). *But see Matter of Talanoa,* 13 I. & N. Dec. 161 (BIA 1969). The first line of cases is of little help to petitioners as those precedents turn on the Attorney General's discretionary authority. Most of these cases were decided under old section 212(a)(17) of the Immigration and Nationality Act of 1952 that gave the Attorney General discretion to grant requests for permission to reapply following deportation or removal. However, under current law, the Attorney General has no such discretion for ten years after an alien has violated § 1182(a)(9)(C)(i). *See In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006). The Board has found that the Attorney General cannot use *nunc pro tunc* relief to grant retroactively what could not be granted prospectively. *Id*. at 876. The second line of cases is inapplicable to this case since the law has not changed.

The immigration judge denied Ramirez-Canales relief *nunc pro tunc* under the first line of cases because the Attorney General has no discretion to waive violations of § 1182(a)(9)(C)(i). However, the relief sought by Ramirez-Canales is of a different nature. He requests that the court grant his application for adjustment of status retroactively – which would have the effect of undoing his subsequent violation of § 1182(a)(9). In that case, no waiver would be required because there would be no violation to waive. There is some support for this argument from past Board decisions. *See Matter of T*, 6 I. & N. Dec. at 414 (BIA 1954) (granting a waiver of violations under an old law

and thereby eliminating the grounds for a violation of a subsequent law). While the availability of this type of relief is unclear, we are hesitant to find the Board is without such authority since it could serve an important error-correcting function. For example, if the agency were at fault in delaying Ramirez-Canales's application for adjustment of status until after the date at which he was required to leave the country, the Board could use *nunc pro tunc* authority to grant relief. Because neither the Board nor the immigration judge addressed the availability of this type of *nunc pro tunc* relief, we remand the case for a determination of whether the Board may retroactively grant Ramirez-Canales's application for adjustment of status.

## III

The Board's reasonable interpretation of the relationship between § 1255(i) and § 1182(a) requires that we AFFIRM the denial of adjustment of status for both Ramirez-Canales and Garcia Correa. However, we REMAND for consideration of Ramirez-Canales's request for relief *nunc pro tunc*.