PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

REYNALDO ANGELES RAMIREZ;
CATALINA SOLORZANO ARZATE,

*Petitioners,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 09-1629

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: May 13, 2010

Decided: June 22, 2010

Before NIEMEYER, GREGORY, and SHEDD,
Circuit Judges.

Petition for review denied by published opinion. Judge Shedd
wrote the opinion, in which Judge Niemeyer and Judge Greg-
ory joined.

## COUNSEL

**ARGUED:** Carolyn Ann Killea, DEUTSCH KILLEA &
EAPEN, Washington, D.C., for Petitioners. Liza Murcia,
UNITED STATES DEPARTMENT OF JUSTICE, Washing-

ton, D.C., for Respondent. **ON BRIEF:** Morris H. Deutsch, DEUTSCH KILLEA & EAPEN, Washington, D.C., for Petitioners. Tony West, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

## OPINION

SHEDD, Circuit Judge:

Reynaldo Angeles Ramirez and his wife Catalina Solorzano Arzate, who is a derivative applicant, petition for review of the Board of Immigration Appeals' decision dismissing their appeal of an immigration judge's denial of Ramirez's application for adjustment of status under 8 U.S.C. § 1255(i).[1] We deny the petition.

I

Ramirez and Arzate are Mexican citizens. Ramirez entered the United States without inspection on at least three occasions. He first entered the country in September 1995, and he departed in December 1996. He next entered the country in May 1997, and he departed in April 2000. He again entered the country in August 2000.

In April 2001, Ramirez's employer, L.F. Jennings, Inc., began the process of seeking adjustment of status for him by filing a labor certification on his behalf. As we recently explained:

> Aliens who seek to adjust their status based on
> employment . . . are . . . required to demonstrate that

---

[1]We hereafter refer to the immigration judge and the Board as "IJ" and "BIA," respectively.

they are eligible for an employment-based visa and that an employment-based visa is immediately available. To do so requires the prospective immigrant to find a job with an employer willing to sponsor him through the time-consuming application process for labor certification and issuance of an immigrant visa. The prospective employer first must apply on behalf of the alien to the Department of Labor ("DOL") for a Labor Certification. The DOL's issuance of a Labor Certification indicates that the DOL is satisfied that (1) sufficient United States workers are not able, willing, qualified, and available for a particular job; and (2) employment of a particular alien will not adversely [affect] the wages and working conditions of United States workers similarly employed. With a valid Labor Certification in hand, the prospective employer then submits a petition (technically speaking, a Form I-140 Immigrant Visa Petition for Alien Worker) to the USCIS [United States Citizenship and Immigration Services] for an immigrant work visa. At that point, the alien . . . can apply to adjust his status by filing a Form I-485.

*Lee v. USCIS*, 592 F.3d 612, 616 (4th Cir. 2010) (citations omitted and internal punctuation altered). If the USCIS grants the application to adjust status, "then the alien is issued a 'Green Card' reflecting his right to live and work in the United States permanently (assuming he does nothing to cause his removal)." *Id.* at 616 n.2.

Ramirez's labor certification was approved. L.F. Jennings Inc. thereafter filed an I-140 visa petition on Ramirez's behalf, and he filed an I-485 application to adjust his status based on the I-140 petition. Although the I-140 petition was subsequently approved, the I-485 application was denied because Ramirez was deemed inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) for aggregate unlawful presence in the United States in excess of one year.

Ramirez and Arzate were then issued Notices to Appear charging them with being removable under § 1182(a)(6)(A)(i) as aliens present in the United States without being admitted or paroled. In response, they conceded removability but argued that Ramirez is entitled to adjustment of status under § 1255(i) based on the approved labor certification and Form I-140 petition.

The IJ denied Ramirez's application for adjustment of status, ruling first that he is ineligible under § 1255(i). The IJ based this ruling on the BIA's precedential decision of *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007). In *Briones*, the BIA held that aliens (such as Ramirez) who are inadmissible under § 1182(a)(9)(C)(i)(I) because they entered the United States unlawfully after accruing more than a year of prior unlawful presence are foreclosed from adjusting their status under § 1255(i) on the basis of approved immigrant visa applications. The IJ also denied Ramirez's alternative request for discretionary *nunc pro tunc* relief.[2] The IJ concluded that Ramirez's case "does not fall into any of the categories in which the Board has applied *nunc pro tunc* relief," and he denied the application for such relief "based on the applicable law and in the exercise of discretion." J.A. 64. Because Ramirez was not entitled to relief, the IJ also denied Arzate's application for derivative relief.

Thereafter, the BIA dismissed Ramirez's and Arzate's appeal of the IJ decision and order. In doing so, the BIA concluded that the IJ had properly followed *Briones*, and it rejected Ramirez's argument that the case should be overruled.[3]

---

[2]"A *nunc pro tunc* order is an order that has retroactive legal effect." *Patel v. Gonzales*, 432 F.3d 685, 693 (6th Cir. 2005). Ramirez contends that his application for adjustment of status should be considered as of November 1996, before he first departed the United States.

[3]Ramirez conceded before the IJ that *Briones* applies to his case, but he urged the IJ to follow contrary rulings by the Ninth and Tenth Circuits that predate *Briones*. *See Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006); *Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2006). The IJ rejected this argument. On appeal, the BIA noted that in *Briones* it had "specifically considered" the Ninth and Tenth Circuit opinions "but found their interpretations to be unpersuasive." J.A. 3.

The BIA further declined to grant Ramirez *nunc pro tunc* relief, finding that the IJ had properly resolved the issue. This petition for review followed.

## II

Ramirez and Arzate primarily challenge the BIA's determination, based on *Briones*, that Ramirez is ineligible for § 1255(i) adjustment of status based on his inadmissibility under § 1182(a)(9)(C)(i)(I). This is purely a legal question involving the BIA's interpretation of immigration statutes. Therefore, our review is subject to the principles of deference articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Midi v. Holder*, 566 F.3d 132, 136 (4th Cir.), *cert. denied*, 130 S. Ct. 805 (2009). Under this standard, we initially examine the statutory language, and if Congress has spoken clearly on the precise question at issue, the statutory language controls; however, if the statute is silent or ambiguous, we defer to the BIA's interpretation if it is reasonable. *Id.* at 136-37.

Ramirez and Arzate argue that they should prevail under both prongs of this analysis. Thus, they contend that under the plain language of § 1255(i), Ramirez is entitled to adjust his status. Alternatively, they contend that even if the statutory language is ambiguous, the BIA's decision in *Briones* is unreasonable.

Since *Briones* was decided, two federal circuit courts have considered the precise issue before us. *See Mora v. Mukasey*, 550 F.3d 231 (2d Cir. 2008); *Ramirez-Canales v. Mukasey*, 517 F.3d 904 (6th Cir. 2008). In both cases, the courts concluded that the pertinent statutory language is ambiguous and that the BIA's interpretation in *Briones* is reasonable and entitled to deference. We agree.

## A.

We begin by examining the statutory language. In doing so, we note that the two statutes, §§ 1182(a) and 1255(i), "serve

conflicting goals. Section 1182(a) lists a number of bases that render an alien inadmissible to this country. Section 1255(i) allows aliens who entered without inspection but who have access to a visa . . . to legalize their status without leaving the country. . . ." *Ramirez-Canales*, 517 F.3d at 907.

Section 1182(a)(6)(A)(i) provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Having a more narrow reach, § 1182(a)(9)(C)(i)(I) provides that an alien who "has been unlawfully present in the United States for an aggregate period of more than 1 year" and "who enters or attempts to reenter the United States without being admitted is inadmissible."[4] There is no dispute that Ramirez is inadmissible under both of these statutes.

Ramirez is seeking adjustment of status pursuant to § 1255(i), which provides (in subsection (1)(A)(i)) that an alien who is physically present in the United States and who "entered the United States without inspection" may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence. However, § 1255(i)(2)(A) permits the Attorney General to adjust the alien's status only if (*inter alia*) the alien "is admissible to the United States for permanent residence."

A plain application of these statutes creates a problem: "By its express language, § 1255(i)(1)(A)(i) applies to aliens who 'entered the United States without inspection.' If all aliens unlawfully present are inadmissible as a result of § 1182(a),

---

[4]Section 1182(a)(9)(C), which was enacted pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), was intended "to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed." *Briones*, 24 I. & N. Dec. at 358. The statutory problem now before us did not exist prior to IIRIRA. *See Mora*, 550 F.3d at 235.

and admissibility is a condition for § 1255(i)(2)(A) relief, then no one would ever be eligible under § 1255(i)(2)(A)." *Ramirez-Canales*, 517 F.3d at 908. Stated differently, as the BIA noted in *Briones*, a plain reading of the statutes makes entry without inspection "both a qualifying and disqualifying condition for adjustment of status." 24 I. & N. Dec. at 362.

It is a "settled rule that we must, if possible, construe a statute to give every word some operative effect." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004). However, as the Second Circuit explained:

> [A] literal reading of section 1255(i) threatens to render the statute a nullity, and so it is necessary to read the statute as implicitly waiving unlawful presence as a ground for inadmissibility in certain circumstances. But whether it should be read as waiving inadmissibility only under the general section 1182(a)(6)(A)(i), or whether it should read as waiving inadmissibility under the more specific section 1182(a)(9)(C)(i)(I) as well, cannot be inferred from the text of the immigration laws alone.

*Mora*, 550 F.3d at 237-38 (citation omitted).

"Not wanting to read § 1255(i) as a nullity but unable to infer from the statutory language the way in which § 1255(i) implicitly waives unlawful presence as a ground for inadmissibility," *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1008 (10th Cir. 2009), we find the statute is ambiguous. *See Mora*, 550 F.3d at 237 ("The statutory language at issue here is certainly ambiguous."); *Ramirez-Canales*, 517 F.3d at 908 (finding that "the terms of these statutes are amenable to multiple interpretations"). Accordingly, we proceed to the next step of the *Chevron* analysis to determine whether the BIA's interpretation in *Briones* is reasonable.[5]

---

[5]We note that "[a] petitioner asking the court to find a BIA interpretation impermissible faces a substantial burden, as judicial deference 'is

### B.

As noted, the BIA held in *Briones* that aliens like Ramirez who are inadmissible under § 1182(a)(9)(C)(i)(I) because they entered the United States unlawfully after accruing more than a year of prior unlawful presence are foreclosed from adjusting their status under § 1255(i) on the basis of approved immigrant visa applications. In reaching this decision, the BIA interpreted § 1255(i) to allow aliens covered only by the more general provision of § 1182(a)(6)(A)(i) to apply for adjustment of status. The BIA offered three main reasons to support this interpretation.

First, the BIA noted that the purpose of § 1182(a)(9)(C) generally "was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed." *Briones*, 24 I. & N. Dec. at 358. The BIA pointed to the fact that aliens covered by § 1182(a)(9)(C) are within a subset of those covered by § 1182(a)(6)(A)(i), and this fact suggests that Congress went out of its way to distinguish between first-time and repeat offenders. The BIA viewed the inclusion of § 1182(a)(9)(C), among other immigration recidivist provisions, as "reflect[-ing] a clear congressional judgment that . . . repeat offenses are a matter of special concern and that recidivist immigration violators are more culpable . . . than first-time offenders." 24 I. & N. Dec. at 371.

Second, the BIA observed that the legislative history indicated Congress' concern with recidivists, and it noted that even in the pre-IIRIRA regime, although no alien who would

especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations.'" *Saintha v. Mukasey*, 516 F.3d 243, 251 (4th Cir.), *cert. denied*, 129 S. Ct. 595 (2008) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)).

now be inadmissible under § 1182(a)(6)(A)(i) would have been formerly excludable, certain aliens who reentered the country after having been deported were ineligible for adjustment of status under § 1255(i). The BIA recognized that the pre-IIRIRA class that would have been excluded now falls within § 1182(a)(9)(C)(i)(II) rather than § 1182(a)(9)(C)(i)(I), but it nonetheless concluded that if § 1182(a)'s "savings clause" (which states "except as otherwise provided in this Act") was applied generally to § 1182(a)(9)(C), such an application to § 1182(a)(9)(C)(i)(II) in particular would have made adjustment of status available to a large class of aliens who never were entitled to it. The BIA called this "an unwarranted leap" to presume that Congress intended such a result. 24 I. & N. Dec. at 367. In light of this, the BIA concluded that § 1182(a)(9)(C) generally "define[d] a *unitary* ground of inadmissibility that may be predicated on various types of conduct," and thus indicated that §§ 1182(a)(9)(C)(i)(I) 1182(a)(9)(C)(i)(II) should not be treated differently for purposes of applying § 1255(i). 24 I. & N. Dec. at 367.

Finally, the BIA noted that when Congress has chosen to extend eligibility for adjustment of status to inadmissible aliens (*i.e.*, where Congress has "otherwise provided" within the meaning of the savings clause), it has generally done so "unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both." 24 I. & N. Dec. at 367. The BIA provided several examples of this, specifically noting Congress' enactment of special remedial legislation for adjustment of status relief to be available to certain Cuban, Central American, and Haitian aliens who were unlawfully present in the United States, as well as the passage of amendments that explicitly gave the Attorney General discretion to waive § 1182(a)(9)(C) as a ground for inadmissibility with regard to those aliens. 24 I. & N. Dec. at 367-68. The BIA concluded that this demonstrates "that when Congress wants to make adjustment of status available to aliens despite their inadmissibility under [§ 1182(a)(9)(C)], it knows how to do so." 24

I. & N. Dec. at 368. The BIA also observed that when Congress passed the amendments permitting this discretionary waiver of inadmissibility, it also modified § 1255(i) to extend the filing deadline for qualifying visa petitions, but it did not remove § 1182(a)(9)(C) as an obstacle to adjustment of status under § 1255(i); thus, Congress intended to foreclose aliens who repeatedly violate the immigration laws from adjusting their status. 24 I. & N. Dec. at 368.

Like the Second and Sixth Circuits, we are unpersuaded that the BIA's *Briones* decision — which is based on the language, structure, and history of the relevant statutes — is unreasonable. *See Mora*, 550 F.3d at 239 ("[W]e do not think it is unreasonable for the agency to interpret section 1255(i) as extending relief to aliens who are inadmissible under section 1182(a)(6)(A)(i) but not to those who are inadmissible also under section 1182(a)(9)(C)(i)(I)."); *Ramirez-Canales*, 517 F.3d at 910 ("We cannot say that the Board's conclusions were unreasonable in light of its careful and well-supported arguments."); *see also Lemus-Losa v. Holder*, 576 F.3d 752, 760 (7th Cir. 2009) ("If the question before us were the same as the one that our sister circuits have confronted — namely, the relation between § (C)(i)(I) and § 1255(i) — we would agree that there is sufficient ambiguity in these provisions to require *Chevron* deference, and we would find that the BIA has drawn a rational line.").[6] Therefore, under the *Chevron* analysis, we must defer to the BIA's interpretation of

---

[6]In addition to the Second and Sixth Circuits, we note that the Fifth Circuit accorded *Chevron* deference to a BIA decision that predated, but is consistent with, *Briones*, concluding that the BIA "was not acting arbitrarily when it ruled that Mortera, who is inadmissible under section 1182(a)(9)(C)(i)(I), is not eligible to adjust his status under section 1255(i)(1)(A)(i)." *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 256 (5th Cir. 2005). The court reasoned: "In our view, the policy developed by the executive branch, as expressed in the BIA's opinion, is a rational approach to reconciling the apparent tension in the statutes and in a reasonable way implements the intent of Congress that some, but not all, illegal aliens may adjust their status to that of a lawful permanent resident." *Id.*

§§ 1182(a)(9)(C)(i)(I) and 1255(i). Consequently, because Ramirez is inadmissible under § 1182(a)(9)(C)(i)(I), he cannot adjust his status under § 1255(i).[7]

## III

Based on the foregoing, we deny the petition for review.

*PETITION DENIED*

---

[7]As an alternative argument, Ramirez and Arzate request us to use our "equitable powers to reverse" the BIA's denial of *nunc pro tunc* relief to Ramirez and to remand this case to the BIA for "serious consideration" of such relief. *Brief of Petitioners*, at 34. We have carefully considered this argument and find it to be without merit.