# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 09-1526

————

| | | |
|---|---|---|
| Crispin Renteria-Ledesma; Claudia Renteria, | * | |
| | * | |
| | * | |
| Petitioners, | * | |
| | * | Petition for Review of an Order |
| v. | * | of the Board of Immigration |
| | * | Appeals. |
| Eric H. Holder, Jr., Attorney General of the United States of America, | * | |
| | * | |
| | * | |
| | * | |
| Respondent. | * | |

————

Submitted: December 17, 2009
Filed: August 4, 2010

————

Before BYE, BEAM, and COLLOTON, Circuit Judges.

————

COLLOTON, Circuit Judge.

Crispin Renteria-Ledesma and his wife Claudia Renteria, citizens of Mexico, petition for review of a decision by the Board of Immigration Appeals ("BIA") that upheld the denial of the petitioners' applications for adjustment of status, filed pursuant to 8 U.S.C. § 1255(i). The BIA acted based on the authority of *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007), which held that aliens inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) are not eligible for adjustment of status under § 1255(i). We

conclude that the BIA's decision reflects a reasonable interpretation of an ambiguous statutory provision, and we therefore deny the petition for review.

## I.

On July 31, 1998, Crispin Renteria-Ledesma departed the United States under a grant of voluntary departure issued by an immigration judge ("IJ"). He illegally reentered the United States without inspection on January 1, 1999. His wife, Claudia Renteria, entered the United States without inspection on April 1, 1999. On April 8, 2004, Renteria-Ledesma filed for an adjustment of status under 8 U.S.C. § 1255(i), based on an approved Petition for Alien Relative filed by Renteria-Ledesma's father, who is a United States citizen. Claudia Renteria sought adjustment of status as a derivative applicant of her husband's application.

On March 29, 2005, the Department of Homeland Security ("DHS") denied Renteria-Ledesma's application for adjustment of status, and then initiated removal proceedings against him and his wife. Both conceded that they were removable, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as aliens present in the United States without being admitted or paroled. Renteria-Ledesma also admitted that he was removable under 8 U.S.C. § 1182(a)(9)(C)(i)(I), as an alien who was "unlawfully present in the United States for an aggregate period of more than 1 year," and who reentered the United States without being admitted. Renteria-Ledesma stipulated that he was unlawfully present in the United States for more than one year prior to his reentry into the United States on January 1, 1999.

At a hearing before an IJ, Renteria-Ledesma and his wife renewed their applications for adjustment of status under § 1255(i). The IJ, however, denied the applications on the ground that Renteria-Ledesma was inadmissible under § 1182(a)(9)(C)(i)(I). Relying on the BIA's decision in *Briones*, 24 I. & N. Dec. 355, the IJ determined that the relevant statutes made aliens removable under

§ 1182(a)(9)(C)(i)(I) ineligible for adjustment of status. The IJ then granted Renteria-Ledesma and his wife the opportunity for voluntary departure.

On administrative appeal, the BIA relied on *Briones* and found no clear error in the IJ's decision to deny Renteria-Ledesma's application for adjustment of status. The BIA noted that the Ninth and Tenth Circuits had held that aliens removable under § 1182(a)(9)(C)(i)(I) are entitled to adjustment of status, but that there was no such authority from the Eighth Circuit. Accordingly, the BIA followed Briones and upheld the IJ's decision that Renteria-Ledesma was ineligible for adjustment of status under § 1255(i).

Renteria-Ledesma argues that the BIA's decision is contrary to the adjustment of status provision in § 1255(i). He also asserts that insofar as the statute is ambiguous, the BIA's interpretation of the statute in *Briones* is unreasonable.

II.

We give "substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Cuadra v. Gonzales*, 417 F.3d 947, 950 (8th Cir. 2005). If the statute is unambiguous, then the agency must apply it. But if the BIA is confronted with an ambiguous statute, then we will defer to a reasonable interpretation of the statute by the agency, in accord with the doctrine of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). *See Ngengwe v. Mukasey*, 543 F.3d 1029, 1033 (8th Cir. 2008).[1]

---

[1]The BIA's decision in this case is unpublished, but the dispositive conclusions are drawn from the BIA's precedential opinion in *Briones*, and we therefore accord deference under *Chevron*. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc).

Section 1255(i) provides that certain aliens who are "physically present in the United States," and who entered without inspection, may apply for adjustment of status to that of an alien lawfully admitted for permanent residence. The Attorney General may adjust the status of these aliens, if, among other conditions, "the alien is eligible to receive an immigrant visa and *is admissible* to the United States for permanent residence." § 1255(i)(2)(A) (emphasis added).

Admissibility is determined according to 8 U.S.C. § 1182. This provision dictates that "[e]xcept as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). The opening clause of the section is a "savings clause," which allows "admission of otherwise inadmissible aliens where the statute so provides." *Mora v. Mukasey*, 550 F.3d 231, 234 (2d Cir. 2008).

Section 1182(a)(6) governs admissibility of "[i]llegal entrants and immigration violators," and provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). With one exception not relevant here, the statute provides that aliens present in the United States after an unlawful entry are inadmissible. *See Mora*, 550 F.3d at 234.

The statute also establishes another reason for inadmissibility that is central to this case. Section 1182(a)(9)(C) governs "[a]liens unlawfully present after previous immigration violations." Subject to an exception not relevant here, § 1182(a)(9)(C)(i) provides:

Any alien who–

> **(I)** has been unlawfully present in the United States for an aggregate period of more than 1 year, or

**(II)** has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law,

and who enters or attempts to reenter the United States without being admitted is inadmissible.

8 U.S.C. § 1182(a)(9)(C)(i).

Renteria-Ledesma argues that the statutory language outlined above clearly entitles him to adjustment of status under § 1255(i). He asserts § 1255(i) expressly permits him to apply for adjustment as an alien who "entered the United States without inspection." § 1255(i)(1)(A)(i). Although § 1255(i) also requires that an alien must be "admissible" to obtain adjustment of status, *id*. § 1255(i)(2)(A), and although Renteria-Ledesma is within the classes of aliens defined as "inadmissible" by § 1182(a)(6)(A)(i) (as an alien "present in the United States without being admitted or paroled") and by § 1182(a)(9)(C)(i)(I) (as an alien who has been "unlawfully present in the United States for an aggregate period of more than 1 year" and then attempts to reenter without admission), he contends that the "savings clause" of § 1182(a) authorizes the Attorney General nonetheless to consider him "admissible," and to grant his application for adjustment.

The BIA in *Briones* concluded that aliens in one of the two classes – those inadmissible under § 1182(a)(6)(A)(i) – are still eligible for adjustment of status under § 1255(i), but not because of the savings clause. Rather, the BIA concluded that "a contrary interpretation would render the language of section [1255(i)] so internally contradictory as to effectively vitiate the statute, an absurd result that Congress is presumed not to have intended." *Briones*, 24 I. & N. Dec. at 365. The contradiction arises from the fact that almost every alien authorized to apply for adjustment as an alien who "entered the United States without inspection," 8 U.S.C. § 1255(i)(1)(A)(i), is also an alien who is "present in the United States without being admitted or paroled," *id*. § 1182(a)(6)(A)(i), and "the plain language of the statute [thus] seems

-5-

to make 'entry without inspection' both a qualifying and a disqualifying condition for adjustment of status." *Briones*, 24 I. & N. Dec. at 362. The agency declined to rely on the savings clause of § 1182(a), because the phrase "[e]xcept as otherwise provided in this chapter," 8 U.S.C. § 1182(a), "most naturally denotes an explicit proviso or stipulation that supplies a condition, exception, or limitation on other statutory language," *Briones*, 24 I. & N. Dec. at 365, and the statutes contained no such proviso.

The BIA also concluded, however, that aliens declared inadmissible under § 1182(a)(9)(C)(i)(I) – for attempting to reenter after having been present unlawfully for more than one year – are *not* eligible for adjustment under § 1255(i). The agency reasoned that no absurd consequences flowed from applying § 1182(a)(9)(C) as written, and that the text and history of the statute supported its conclusion.

The BIA first noted that § 1255(i)(1)(A) applies to a class of aliens who "entered the United States without inspection," but that this class of aliens is not coextensive with the class of aliens declared inadmissible under § 1182(a)(9)(C)(i)(I). *Briones*, 24 I. & N. Dec. at 365. Rather, the BIA explained that aliens inadmissible under § 1182(a)(9)(C)(i)(I) were "recidivists" who reentered the United States illegally after an initial period of unlawful presence, and that these aliens constitute only a subset of those aliens who entered the United States without inspection as required by § 1255(i)(1)(A). *See id.* at 365-66. The opinion observed that the title of § 1182(a)(9)(C) – "[a]liens unlawfully present after previous immigration violations" – suggests that Congress was concerned about recidivist violators. *Id.* at 366. And the BIA relied on its previous conclusion in *In re Rodarte-Roman*, 23 I. & N. Dec. 905, 909 (BIA 2006), that the purpose of the section of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, that created § 1182(a)(9)(C) was to "single out recidivist immigration violators." *Briones*, 24 I. & N. Dec. at 358. For these reasons, the BIA determined that there is no absurdity in applying the literal statutory language to

-6-

conclude that aliens inadmissible under § 1182(a)(9)(C)(i)(I) are ineligible for adjustment of status.

The BIA also observed that allowing adjustment of status for aliens inadmissible under § 1182(a)(9)(C) would expand eligibility for adjustment to aliens who were ineligible prior to the IIRIRA amendments, and the BIA thought it unlikely that Congress meant to cause that result. *See id.* at 366-67. Unlike § 1182(a)(6)(A)(i), which encompasses a class of aliens who were not inadmissible prior to IIRIRA, § 1182(a)(9)(C) applies to many aliens who were inadmissible under the former statute, and thus ineligible for adjustment. Although § 1182(a)(9)(C) applies both to aliens who were previously removed (a group that was generally inadmissible prior to the IIRIRA) and aliens who left voluntarily after one year of unlawful presence (a group that was not ineligible for adjustment under prior law), the BIA saw no good reason to treat them differently under the new statute. *Id.* at 362-63, 366-67. The opinion concluded that the statute defines "a *unitary* ground of inadmissibility that may be predicated on various types of conduct," and that "[w]here Congress has not seen fit to distinguish between these two groups for purposes of inadmissibility, we see no justification for distinguishing between them as candidates for [§ 1255(i)] adjustment." *Id.* at 366-67.

In rejecting application of the savings clause of § 1182(a) to "recidivist" aliens, the BIA also cited the fact that in "every other case where Congress has extended eligibility for adjustment of status to inadmissible aliens (in other words, where Congress has 'otherwise provide[d]' within the meaning of the savings clause) it has done so unambiguously." *Id.* at 367 (alteration in original). The opinion highlighted that where Congress extended adjustment of status to aliens unlawfully present in the United States through special legislation, Congress expressly negated the applicability of § 1182(a)(9)(C). The BIA explained that the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2193 (1997), and the Haitian Refugee Immigration Fairness Act of 1998 ("HRIFA"), Pub. L. No. 105-

277, 112 Stat. 2681-538, both included some exceptions to the admissibility requirement for adjustment of status, but neither statute expressly excepted aliens inadmissible under § 1182(a)(9)(C). *See Briones*, 24 I. & N. Dec. at 367. As part of the LIFE Act Amendments of 2000, Pub. L. No. 106-554, 114 Stat. 2763A-324, however, Congress amended both the NACARA and HRIFA to allow the Attorney General discretion to waive inadmissibility under § 1182(a)(9)(C) for adjustment of status applicants. *See Briones*, 24 I. & N. Dec. at 368. Thus, the BIA concluded, "[t]hat Congress deemed it necessary to provide for such waivers in the NACARA and HRIFA contexts is strong evidence that Congress understood an alien's inadmissibility under [§ 1182(a)(9)(C)] to be a barrier *even* to those forms of adjustment that were reserved for aliens unlawfully present in the United States." *Id.*

In reviewing the BIA's decision, we first conclude that there is ambiguity in the statutes concerning adjustment of status and inadmissibility. A literal reading of § 1255(i) would render the adjustment of status provision a virtual nullity, because aliens who "entered the United States without inspection," as required by § 1255(i)(1)(A)(i), generally are not "admissible," as required by § 1255(i)(2)(A). To avoid this consequence, the requirement that an alien be "admissible" must be read to exclude implicitly certain categories of inadmissibility set forth in § 1182(a). The statutes, however, are not clear about how these provisions should be reconciled, and "[t]he precise reach of section 1255(i)(1)(A)(i) is an implicit statutory ambiguity the executive branch is authorized to fill." *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005).

We also conclude that the BIA's interpretation of these ambiguous statutes is reasonable. All four courts of appeals to have addressed the question have reached the same conclusion. *Ramirez v. Holder*, No. 09-1629, 2010 WL 2499988, at *4 (4th Cir. June 22, 2010); *Mora*, 550 F.3d at 239; *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910 (6th Cir. 2008); *Mortera-Cruz*, 409 F.3d at 256 (deferring to a pre-*Briones* determination by the BIA that aliens inadmissible under § 1182(a)(9)(C)(i)(I) are not

eligible for § 1255(i) adjustment of status).  Renteria-Ledesma relies on decisions of the Ninth and Tenth Circuits that predate *Briones*, *see Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1244 (10th Cir. 2006); *Acosta v. Gonzales*, 439 F.3d 550, 556 (9th Cir. 2006), but these opinions did not have the benefit of the agency's construction of the statutes, and they did not apply the deferential analysis of *Chevron* to the BIA's decision.  *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-85 (2005); *cf. Gonzales v. DHS*, 508 F.3d 1227, 1237-42 (9th Cir. 2007).

In short, we think it was reasonable for the BIA to distinguish between § 1182(a)(6)(A) and § 1182(a)(9)(C), given that treating aliens subject to the latter as inadmissible, and thus ineligible for adjustment of status, does not render § 1255(i)(1)(A) a virtual nullity.  There also are appropriate reasons for the BIA to construe the statutes as creating "a *unitary* ground of inadmissibility" under § 1182(a)(9)(C) for aliens with previous immigration violations, and to determine that Congress did not distinguish between aliens inadmissible under § 1182(a)(9)(C)(i)(I) – for illegal reentry after more than a year of unlawful presence in the United States – and those inadmissible under § 1182(a)(9)(C)(i)(II) – for illegal reentry after an order of removal.  *Briones*, 24 I. & N. Dec. at 367.  That Congress may have established additional sanctions for aliens who were previously removed, *e.g.*, 8 U.S.C. § 1231(a)(5), does not undermine the reasonableness of the BIA's reconciliation of § 1255(i) and § 1182(a)(9)(C).  Nor do we think the legislative history of the LIFE Act Amendments cited by Renteria-Ledesma, *see Padilla-Caldera*, 453 F.3d at 1243 n.5, compels a distinction between the two subsections of § 1182(a)(9)(C) when the text of the amendments makes no such distinction.

Renteria-Ledesma also contends that his application for adjustment of status should be given retroactive effect, such that it would cure "*nunc pro tunc*" his later unlawful entry, or that we remand the case for the BIA to consider whether his application should be granted retroactively.  Renteria-Ledesma did not raise either of these issues in his administrative appeal to the BIA, and his failure to exhaust the issue

precludes review at this stage of the proceedings. *Ming Ming Wijono v. Gonzales*, 439 F.3d 868, 871 (8th Cir. 2006).

The petition for review is denied.

_____