**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO JAVIER GARFIAS-
RODRIGUEZ,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 09-72603

Agency No.
A079-766-006

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 8, 2010—Pasadena, California

Filed April 11, 2011

Before: Raymond C. Fisher and Jay S. Bybee,
Circuit Judges, and Edward F. Shea, District Judge.*

Opinion by Judge Bybee

---

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

4781

## COUNSEL

Soren M. Rottman, Esq., Northwest Immigrant Rights Project, Granger, Washington, for the petitioner.

Tony West, Blair T. O'Connor, and Luis E. Perez, Civil Division, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

BYBEE, Circuit Judge:

Petitioner-Appellant Francisco Garfias-Rodriguez ("Garfias") appeals a final removal order issued by the Board of Immigration Appeals ("BIA") that determined that he was ineligible for adjustment of status under 8 U.S.C. § 1255(i). He challenges the order on two grounds. First, he contends that our interpretation of 8 U.S.C. §§ 1182(a)(9)(C)(i)(I) and 1255(i) in *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), takes precedence over the BIA's subsequent and contrary reading in *Matter of Briones*, 24 I. & N. Dec. 355 (BIA 2007). Second, he argues that even if *Briones* is controlling, the BIA impermissibly applied it to him retroactively. Additionally, Garfias argues that the Attorney General exceeded his authority by promulgating 8 C.F.R. § 1240.26(i), which terminates a grant of voluntary departure upon the filing of a petition for review of a final removal order. We reject all three of Garfias's arguments and deny his petition for review.

I

Garfias is a native and citizen of Mexico. He unlawfully entered the United States in 1996 and departed the country, once in 1999 and once in 2001 (to visit his ailing mother and to attend her funeral, respectively), each time reentering without inspection. On April 5, 2002, Garfias married his current wife, Nancy, a United States citizen. He subsequently applied to adjust his status to that of a lawful permanent resident and paid an additional $1,000 fee with this application because he had entered without inspection. On March 24, 2004, the United States Immigration and Customs Enforcement ("ICE") instituted removal proceedings against Garfias on the grounds that he entered the United States without inspection.

At a hearing before an Immigration Judge ("IJ"), ICE reiterated its allegations that Garfias departed the United States

in 1999 and reentered in 2000 without being paroled or admitted. Garfias admitted these facts and conceded that he was removable, but argued that he could still adjust his status under 8 U.S.C. § 1255(i). He requested relief in the form of adjustment and, in the alternative, voluntary departure.

The IJ denied Garfias's application for status adjustment but granted him voluntary departure. The IJ held that Garfias was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) and was ineligible for any waiver of inadmissibility. Accordingly, he was ineligible for status adjustment under § 1255(i), which requires an applicant to be admissible to the United States.

Garfias appealed to the BIA. In a per curiam decision, the BIA sustained his appeal and remanded the case to the IJ for reconsideration in light of our previous decisions in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), and *Acosta*.

On remand, the IJ acknowledged *Perez-Gonzalez* and *Acosta*, but denied Garfias's application on other grounds. The judge denied the request for status adjustment but once again granted voluntary departure.

Garfias again appealed to the BIA. Instead of relying on the IJ's stated reasoning, however, the BIA cited its intervening opinion in *Briones*, in which it found that persons inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) could not seek adjustment of status under § 1255(i). It dismissed Garfias's appeal, granted him sixty days to voluntarily depart, ordered removal in the event that he failed to depart, and informed him that filing a petition for review would immediately terminate the grant of voluntary departure.

Garfias subsequently filed a petition for review with this court as well as a motion to stay his removal.

II

We must first determine whether aliens who are inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) may nonetheless apply for adjustment of status under 8 U.S.C. § 1255(i). Deferring to the BIA's decision in *Briones*, we hold that they may not.[1]

**[1]** The opening clause of § 1182(a) specifies that "*[e]xcept as otherwise provided in this chapter*, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a) (emphasis added). This provision is a "savings clause" that authorizes "admission of otherwise inadmissible aliens where the statute so provides." *Renteria-Ledesma v. Holder*, 615 F.3d 903, 906 (8th Cir. 2010) (citing *Mora v. Mukasey*, 550 F.3d 231, 234 (2d Cir. 2008)). Subsection 1182(a)(9)(C)(i)(I) provides that "[a]ny alien who . . . has been unlawfully present in the United States for an aggregate period of more than 1 year . . . and who enters or attempts to reenter the United States without being admitted is inadmissible." Section 1182(a)(9)(C)(ii) provides an exception for those aliens who are "seeking admission more than 10 years after the date of the alien's last departure from the United

---

[1]We review de novo purely legal questions concerning the meaning of the immigration laws. *See Altamirano v. Gonzales*, 427 F.3d 586, 591 (9th Cir. 2005). Furthermore, we defer to the BIA's interpretation and application of immigration laws unless its interpretation is "contrary to the plain and sensible meaning of the law at issue." *Poblete Mendoza v. Holder*, 606 F.3d 1137, 1140 (9th Cir. 2010).

In interpreting the immigration laws, we grant deference to the BIA under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). The *Chevron* analysis consists of two steps. First, we ask whether Congress has spoken to the precise question at issue; if it has, then we give effect to the unambiguously expressed intent of Congress. *Id.* at 842-43. If the statute is ambiguous, on the other hand, we ask only whether the agency has adopted "a permissible construction of the statute." *Id.* at 843.

States if . . . the Secretary of Homeland Security has consented to the alien's reapplying for admission."

**[2]** Section 1255(i) sets out the conditions under which an alien who is "physically present in the United States" and who "entered the United States without inspection" may "apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." 8 U.S.C. §§ 1255(i)(1)(A), (C). Section 1255(i)(2)(A) specifies that the Attorney General may adjust an alien's status if "the alien is eligible to receive an immigrant visa and is *admissible* to the United States for permanent residence." 8 U.S.C. § 1255(i)(2)(A) (emphasis added).

Neither § 1182(a)(9)(C) nor § 1255(i) makes reference to the other.

### A

We first briefly summarize the relevant legal framework preceding this case. In *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), we held, contrary to an INS guidance memorandum, that the inadmissibility provision of 8 U.S.C. § 1182(a)(9)(C)(i)(II)did not preclude status adjustment under 8 U.S.C. § 1255(i).[2] We observed, first, that the INS's interpretation of the two provisions was contained in the "informal format[ ]" of a guidance memorandum, and was therefore not entitled to "the rigorous deference owed formal agency interpretations under [*Chevron*]." *Id.* at 793. Applying this less deferential form of review, we found that it was "impossible to reconcile the interpretation of the statute in 8 C.F.R. § 212.2, which indicates that illegal reentrants can seek

---

[2]Section 1182(a)(9)(C)(i)(II) is the companion provision of the statute at issue in this case and provides that "[a]ny alien who . . . has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law . . . and who enters or attempts to reenter the United States without being admitted is inadmissible."

adjustment of status, with the interpretation in the agency's informal guidance memorandum, which states that they are categorically barred from receiving adjustment of status." *Id.* at 793-94.**³** Accordingly, we concluded that "[i]n the absence of a more complete agency elaboration of how its interpretation of [§ 1182(a)(9)] can be reconciled with its own regulations, we must defer to the regulations rather than to the informal guidance memorandum." *Id.* at 794. We held that aliens who are inadmissible under § 1182(a)(9)(C)(i)(II) could nonetheless seek adjustment of status. *Id.* at 795.

**[3]** Next, in *Acosta v. Gonzales*, 439 F.3d 550, 556 (9th Cir. 2006), we extended the reasoning of *Perez-Gonzalez* and held that aliens who were inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) — the provision at issue in this case — remained eligible for adjustment under § 1255(i). We emphasized that "*Perez-Gonzalez* appears to control the issue . . . before us" and that "any attempt to distinguish the present case from *Perez-Gonzalez* based on the different grounds of inadmissibility involved would be unpersuasive." *Id.* at 554.

The BIA subsequently issued two opinions that are relevant to this case. In *Matter of Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), the BIA accepted our invitation to provide "a more complete agency elaboration of how its interpretation of [§ 1182(a)(9)] can be reconciled with its own regulations." *Perez-Gonzalez*, 379 F.3d at 794. The BIA concluded that "the Ninth Circuit's analysis regarding the availability of a retroactive waiver of the ground of inadmissibility set forth at [§ 1182(a)(9)(C)(i)] contradicts the language and purpose of the Act and appears to have proceeded from an understandable, but ultimately incorrect, assumption regarding the applicability of 8 C.F.R. § 212.2." *Torres-Garcia*, 23 I. & N. Dec.

---

**³**8 C.F.R. §§ 212.2(e) and 212.2(i)(2) interpret § 1255(i), and the former provision specifies that applicants for adjustment of status "must request permission to reapply for entry in conjunction with [their] application for adjustment of status."

at 873. The BIA noted that 8 C.F.R. § 212.2 — the regulation that we had held was in conflict with the agency guidance memoranda — "was not promulgated to implement . . . section [1182(a)(9)]," but "implement[ed] statutory provisions that were repealed by the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA')]." *Id.* at 874, 875. It further noted that our decision in *Perez-Gonzalez* effectively allowed § 1255(i) to function as means to "circumvent the statutory 10-year limitation on [§ 1182(a)(9)(C)(ii)] waivers" by allowing aliens to "simply reenter[ ] unlawfully before requesting the waiver." *Id.* at 876.

**[4]** In *Matter of Briones*, 24 I. & N. Dec. 355, 370 (BIA 2007), the BIA revisited the question we answered in *Acosta* and again rejected our reasoning. It explained that § 1182(a)(9)(C)(i)(I) applies to *"recidivists*, that is, those who have departed the United States after accruing an aggregate period of 'unlawful presence' of more than 1 year and who *thereafter* entered or attempted to reenter the United States unlawfully." *Id.* at 365-66. The Board observed that § 1182(a)(9)(C)(i)(I) could therefore trump § 1255(i) without rendering the latter provision superfluous. *Id.* at 365-66. It noted that "in every other case where Congress has extended eligibility for adjustment of status to inadmissible aliens . . . it has done so unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both." *Id.* at 367. Accordingly, the BIA decided that despite our decision in *Acosta*, it "[found] little merit in the . . . argument . . . that it would be incompatible with the remedial purpose of section [1255(i)] to make adjustment of status unavailable to [aliens inadmissible under section 1182(a)(9)(C)(i)(I)]." *Id.* at 370. The Board held that "aliens who are inadmissible under [§ 1182(a)(9)(C)(i)(I)] cannot qualify for [§ 1255(i)] adjustment, absent a waiver of inadmissibility." *Id.* at 371.

**[5]** We addressed the effect of the BIA's *Torres-Garcia* opinion in *Duran Gonzales v. Department of Homeland*

*Security*, 508 F.3d 1227 (9th Cir. 2007). In *Duran Gonzales*, we held that under the framework established *by Chevron* and *National Cable and Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), the BIA's *Torres-Garcia* opinion effectively superseded our interpretation in *Perez-Gonzalez. See Duran Gonzalez*, 508 F.3d at 1242. First, we found that in *Perez-Gonzalez* we had interpreted the interplay of §§ 1182(a)(9)(C)(i)(I) and 1255(i) only after we determined that the statute was ambiguous and that the BIA had not issued a controlling decision that resolved this ambiguity. *See id.* at 1237-38. Second, relying on *Brand X*, we held that *Perez-Gonzalez* did not foreclose subsequent agency interpretations of the statute, and that *Torres-Garcia* constituted such an interpretation. *See id.* at 1238-41. We concluded that the BIA's interpretation of § 1182(a)(9)(C)(i)(II) in *Torres-Garcia* was "clearly reasonable and is therefore entitled to *Chevron* deference under *Brand X.*" *Id.* at 1242. Following *Torres-Garcia*, we held that aliens "ineligible to receive [§ 1182] waivers" are "not eligible to adjust their status" under § 1255(i). *See id.* at 1242.

With that background, we now turn to the case before us.

B

We begin by asking whether Congress has spoken to the precise question at issue. *See Chevron*, 467 U.S. at 842. Here, Garfias urges us to hold that we settled the question of whether § 1182(a)(9) trumps § 1255(i) in *Acosta*, when we interpreted the same statutes in the absence of an authoritative interpretation by the BIA. However, we see no basis for distinguishing § 1182(a)(9)(C)(i)(I) from § 1182(a)(9)(C)(i)(II) or for departing from the reasoning of *Duran Gonzalez*. In *Brand X*, the Supreme Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency

discretion." 545 U.S. at 982; *see Duran Gonzalez*, 508 F.3d at 1235-36. Because we believe that *Acosta* was not such a decision, we hold that *Briones* is entitled to deference under *Chevron* and *Brand X*.

**[6]** We wrote in *Acosta* that "[t]he statutes involved do not clearly indicate whether the inadmissibility provision or the penalty-fee adjustment of status provision should take precedence," and reached our conclusion there by relying heavily on our earlier *Perez-Gonzalez* decision. *Acosta*, 439 F.3d at 553. Other circuits have also noted that the tension between §§ 1182(a)(9)(C)(i)(I) and 1255(i) creates a statutory ambiguity and cannot be resolved conclusively by resort to the text. *See, e.g.*, *Renteria-Ledesma v. Holder*, 615 F.3d 903, 908 (8th Cir. 2010); *Ramirez v. Holder*, 609 F.3d 331, 335-36 (4th Cir. 2010); *Mora v. Mukasey*, 550 F.3d 231, 238 (2d Cir. 2008); *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907-08 (6th Cir. 2008); *see also Lemus-Losa v. Holder*, 576 F.3d 752, 760 (7th Cir. 2009) (noting, in dicta, that "[i]f the question before us were . . . the relation between [§ 1182(a)(9)(C)(i)(I)] and [§ ] 1255(i) . . . we would agree that there is sufficient ambiguity in these provisions to require *Chevron* deference, and we would find that the BIA has drawn a rational line"); *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009) ("We need not wrestle much with whether §§ 1255(i) and 1182(a) are ambiguous for *Chevron* purposes. . . . [A]pplying the statutes' plain language would render § 1255(i) a nullity. Unable to rely on the statutes' plain language, therefore, we cannot ascertain whether Congress had an intention on the precise question at issue." (internal citations and alterations omitted)).

**[7]** We previously refused to give deference to the BIA's interpretation only because it came in the form of a guidance memorandum, which we held was "not entitled to the same rigorous deference due agency regulations." *Acosta*, 439 F.3d at 554. In deciding *Briones*, however, the BIA has provided a thoroughly developed opinion that disagrees with our inter-

pretation in *Acosta*. Additionally, our decision in *Acosta* relied heavily on our reasoning in *Perez-Gonzalez*, which has itself been effectively abrogated by the BIA's decision in *Torres-Garcia*. *See Duran Gonzalez*, 508 F.3d at 1242. Because *Acosta* did not "unambiguously foreclose[ ]" the BIA's authority to interpret the interplay between §§ 1182(a)(9)(C)(i)(I) and 1255(i), the BIA remains "the authoritative interpreter (within the limits of reason)" of the immigration laws. *Brand X*, 545 U.S. at 983. Thus, we hold that the BIA's decision in *Briones* addressed a statutory ambiguity and is entitled to *Chevron* deference.

## D

**[8]** We now turn to whether the BIA's interpretation of the statutory framework is reasonable. *See Chevron*, 467 U.S. at 843-44. Every circuit that has addressed the issue has concluded that *Briones* is a reasonable interpretation of §§ 1182(a)(9)(C)(i)(I) and 1255(i). *See Renteria-Ledesma*, 615 F.3d at 908; *Ramirez*, 609 F.3d at 337; *Mora*, 550 F.3d at 239; *Ramirez-Canales*, 517 F.3d at 910. We agree with our sister circuits and hold that the BIA's conclusion is reasonable.

As we noted in *Acosta*, §§ 1182(a)(9)(C)(i)(I) and 1255(i) contain two competing mandates. The former provision seems to categorically exclude certain classes from admissibility altogether, while the latter provision allows an otherwise inadmissible alien to seek a status adjustment in exchange for a penalty fee. *See Acosta*, 439 F.3d at 553. Thus, § 1182(a) refers generally to "aliens who are *inadmissible*," 8 U.S.C. § 1182(a) (emphasis added) — including all aliens who are physically present in the United States and who entered without inspection — while § 1255(i) refers to "alien[s] physically present in the United States . . . who entered the United States without inspection," but who may nonetheless be deemed "eligible to receive an immigrant visa and . . . *admissible* to the United States," 8 U.S.C. § 1255(i)(2)(A) (emphasis added).

The BIA also acknowledged this ambiguity, noting that "the plain language of the statute seems to make 'entry without inspection' both a qualifying and a disqualifying condition for adjustment of status." *Briones*, 24 I. & N. Dec. at 362.

[9] The BIA found that the current adjustment provision was enacted as part of the IIRIRA. The BIA observed that Congress has generally limited adjustment of status to those aliens who have been "inspected and admitted" into the United States. *Id.* at 359. Although Congress intended to discourage aliens from moving to the United States before becoming eligible for permanent residence, Congress found that the "inspected and admitted" policy forced relatives of permanent residents to leave the country just so they could apply for an immigrant visa at a U.S. embassy or consulate. *Id.* Section 1255(i) authorized a "limited departure from the general 'inspection and admission' requirement. *Id.* at 360. The BIA noted that the current ambiguity between the §§ 1182(a)(9)(C)(i)(I) and 1255(i) was a consequence of a switch from use of the term "deportable" to "inadmissible" to describe aliens who entered without inspection. *See id.* at 363. It resolved this ambiguity by concluding that § 1255(i) applies to *some* aliens who are physically present in the United States and entered without inspection, but not to those aliens who entered the country without inspection, stayed for at least a year, departed the country, and then "enter[ed] or attempt[ed] to reenter the United States without being admitted." 8 U.S.C. § 1182(a)(9)(C)(i)(II). The latter class of aliens — which the BIA refers to as "recidivists" — are not eligible for adjustment of status under § 1255(i) because otherwise § 1255(i) would "be making . . . adjustment available to a whole new class of aliens who had *never* been eligible for it." *Briones*, 24 I. & N. Dec. at 365-67. Finally, the BIA deemed it "of crucial importance" to its interpretation that "in every other case where Congress has extended eligibility for adjustment of status to inadmissible aliens . . . it has done so unambiguously, either by negating certain grounds of inadmissibility outright

or by providing for discretionary waivers of inadmissibility, or both." *Id.* at 367.

**[10]** In light of the BIA's reasoned opinion, we hold that the BIA's decision in *Briones* is entitled to deference. Applying *Briones* to this case, we conclude that Garfias is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) and not subject to the exception in § 1182(a)(9)(C)(ii). He is, therefore, not eligible for adjustment of status under 8 U.S.C. § 1255(i).

## III

**[11]** Garfias contends that even if *Briones* controls the interpretive question in this case, the BIA should not have retroactively applied its conclusion to his case. We disagree. An agency is generally free to implement new administrative policies through adjudicative procedures instead of rulemaking. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). We have held that an agency "may act through adjudication to clarify an uncertain area of the law, so long as the retroactive impact of the clarification is not excessive or unwarranted." *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1328 (9th Cir. 1982).

**[12]** Here, however, the BIA has not implemented a new policy or exercised its regulatory authority to adopt a new rule; it has simply put forward an interpretation of §§ 1182(a)(9)(C)(i)(I) and 1255(i) that happens to be at odds with our interpretation of the same provisions in *Acosta*. Recently, in *Morales-Izquierdo v. Department of Homeland Security*, 600 F.3d 1076, 1087-92 (9th Cir. 2010), we held that the BIA could retroactively apply its decision in *Torres-Garcia* despite the fact that the BIA's opinion departed from the interpretation we provided in *Perez-Gonzalez*. The petitioner in that case argued that, unlike a judicial interpretation of a statute, which "explain[s] [the court's] understanding of what the statute has meant continuously since the date when it became law," an agency interpretation merely "gives con-

tent to the gap" in a statutory scheme and may not apply retro-actively. *Id.* at 1088. We acknowledged that "when a court overrules its own prior interpretation of an ambiguous statute in deference to an interpretation by an agency — an agency that lacks the constitutional authority to overrule the court's prior interpretation — the fiction that the statute has always meant one particular thing may appear to break down." *Id.* at 1089. However, we noted that in light of *Brand X*, an agency, like a state court, "remains the authoritative interpreter of a statute it is charged with administering." *Id.* at 1089-90 (internal quotation marks omitted). Accordingly, "although an agency's power to override prior judicial precedent is more circumscribed than that of a state court, a subsequent judicial interpretation of the same statute based on *Brand X* deference is no less precedential simply because it relied on agency expertise that was not available to the earlier judicial panel." *Id.* at 1090. We held in that case that the rule we adopted in *Duran Gonzales* could properly be applied to the petitioner. *See id.*

**[13]** We see no reason to depart from our previous treatment of § 1182(a)(9)(C)(i)(II) in deciding how to treat its companion provision. Today, we hold that adjustment of status under § 1255(i) is unavailable to aliens inadmissible under § 1182(a)(9)(C)(i)(I). In doing so, we are not creating a new rule of law, but rather we are correcting our prior reading of the statutes in *Acosta* based on the BIA's authoritative ruling in *Briones*. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant *before* as well as after the decision of the case giving rise to that construction." (emphasis added)). Under *Chevron* and *Brand X*, the BIA has authority to offer authoritative constructions of immigration provisions, so we see no reason to treat *Briones* as anything less than a binding clarification of §§ 1182(a)(9)(C)(i)(I) and 1255(i), one that we approve today. Accordingly, we hold that the BIA properly applied its decision in *Briones* to Garfias.

IV

**[14]** Finally, Garfias challenges the automatic termination of the BIA's grant of voluntary departure on two grounds. First, he argues that notwithstanding 8 C.F.R. § 1240.26(i), which provides for the automatic termination of a voluntary departure grant upon the filing of a petition for review, we retain equitable authority to stay the voluntary departure period. Second, he argues that the Attorney General exceeded his authority when he promulgated the regulation pursuant to 8 U.S.C. § 1229c(e).

**[15]** The regulation at issue provides, in relevant part, that if an alien files a petition for review of a final removal order, "any grant of voluntary departure shall terminate automatically upon the filing of the petition or other judicial challenge," and was made effective on January 20, 2009. 8 C.F.R. § 1240.26(i). The authorizing statute, § 1229c(e), authorizes the Attorney General to "by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens." 8 U.S.C. § 1229c(e).[4]

A

We first consider whether we have equitable authority to stay Garfias's voluntary departure period regardless of 8 C.F.R. § 1240.26(i). We conclude that we do not.

---

[4]Section 1229c(e) further provides that "[n]o court may review any regulation issued under this subsection." 8 U.S.C. § 1229c(e). Although this might seem to strip us of jurisdiction, another provision, 8 U.S.C. § 1252(a)(2)(D), specifies that "[n]othing . . . in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." Because the parties have not disputed our ability to review the Attorney General's authority to promulgate 8 C.F.R. § 1240.26(i), we see no occasion to determine whether § 1229c(e) and § 1252(a)(2)(D) conflict with each other and, if they do, which statute assumes priority over the other.

The Supreme Court has explicitly reserved the question of whether courts retain equitable jurisdiction to grant stays of voluntary departure periods pending appellate review. *See Dada v. Mukasey*, 554 U.S. 1, 10-11 (2008) ("[S]ome Federal Courts of Appeals have found that they may stay voluntary departure pending consideration of a petition for review on the merits. This issue is not presented here, however, and we leave its resolution for another day." (internal citations omitted)). We had previously held that we have equitable authority to stay a petitioner's voluntary departure period. *El Himri v. Ashcroft*, 344 F.3d 1261, 1263 (9th Cir. 2003). Our sister circuits, except for the Fourth, had agreed. *See, e.g.*, *Thapa v. Gonzales*, 460 F.3d 323, 332 (2d Cir. 2006); *Obale v. Attorney General*, 453 F.3d 151, 157 (3d Cir. 2006); *Bocova v. Gonzales*, 412 F.3d 257, 267-68 (1st Cir. 2005); *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 654 (7th Cir. 2004); *Rife v. Ashcroft*, 374 F.3d 606, 615-16 (8th Cir. 2004); *Nwakanma v. Ashcroft*, 352 F.3d 325, 327 (6th Cir. 2003) (per curiam). *But see Ngarurih v. Ashcroft*, 371 F.3d 182, 194 (4th Cir. 2004) ("Having concluded . . . that 8 U.S.C. § 1252(a)(2)(B) precludes judicial review of the BIA's order granting voluntary departure, we cannot evade this statutory directive by resort to equity.").

However, each of these decisions was reached *before* the Attorney General promulgated 8 C.F.R. § 1240.26(i). The regulation specifies that "[i]f, prior to departing the United States, the alien files a petition for review . . . or any other judicial challenge to the administratively final order, any grant of voluntary departure shall terminate automatically upon the filing of the petition or other judicial challenge." 8 C.F.R. § 1240.26(i). The First and Third Circuits have recently acknowledged that this regulation, in effect, resolves the question of whether courts have authority to stay the voluntary departure period pending review, since it provides for the automatic termination of that period. *See Patel v. Attorney General*, 619 F.3d 230, 234 (3d Cir. 2010) ("Under the plain language of 8 C.F.R. § 1240.26(i), we cannot stay a grant of

voluntary departure after a petitioner seeks judicial review because the grant has already terminated."); *Hakim v. Holder*, 611 F.3d 73, 78 (1st Cir. 2010) ("[8 C.F.R. § 1240.26(i)] amended the voluntary departure regulation, which now, in part, provides that a grant of voluntary departure on or after January 20, 2009, automatically terminates with the filing of a petition for review.").

**[16]** We agree with the First and Third Circuits. Garfias has given us no reason to believe that courts possess equitable authority to stay voluntary departure periods contrary to the Attorney General's regulation. In § 1229c(e), Congress granted the Attorney General the authority to control grants of voluntary departure, and the Attorney General in turn exercised this authority by deciding that a grant of voluntary departure terminates upon the filing of a petition for review. This regulation effectively abrogates our contrary decision in *El Himri*, 344 F.3d at 1262 (relying on *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1175-78 (9th Cir. 2003) (Berzon, J., concurring). *See also Hakim*, 611 F.3d at 78; *Zazueta-Carrillo*, 322 F.3d at 1175 (Berzon, J., concurring) ("There is nothing in the statute or the applicable regulations precluding such a stay of the voluntary departure period."); *id.* at 1176 ("Given the absence of any statutory prohibition on stays of periods of voluntary departure once granted . . . we retain such [equitable] authority."); *cf. United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) (noting that Congress is free to limit federal courts' equitable discretion in crafting injunctive relief). Accordingly, because the filing of a petition now automatically terminates a petitioner's grant of voluntary departure, we conclude that, assuming that 8 C.F.R. § 1240.26(i) is valid, we have no authority to issue an equitable stay of the voluntary departure period.

B

**[17]** Although no circuit so far has been squarely confronted with the question of whether 8 C.F.R. § 1240.26(i) is

a reasonable application of § 1229c(e), a number of circuits have summarily applied the regulation without explicitly affirming its validity. *See, e.g.*, *Pawlowska v. Holder*, 623 F.3d 1138, 1139 n.2 (7th Cir. 2010); *Patel v. Attorney General*, 619 F.3d 230, 233-34 (3d Cir. 2010); *Hakim v. Holder*, 611 F.3d 73, 78 (1st Cir. 2010).

**[18]** In determining whether an agency regulation is ultra vires, we again apply the two-step *Chevron* analysis. *See Mejia v. Gonzales*, 499 F.3d 991, 996 (9th Cir. 2007). Accordingly, we first ask whether Congress has spoken to the precise matter at issue, and if it has not, we ask whether the agency's attempt to resolve the resulting ambiguity is reasonable. *See Chevron*, 467 U.S. at 842-43. We hold that Congress has unambiguously granted the Attorney General broad authority to control the scope of voluntary departure grants, and that we need not reach *Chevron*'s second step.

Section 1229c authorizes the Attorney General to "permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title." 8 U.S.C. § 1229c(a)(1). Subsection (e), which is at issue in this case, provides the Attorney General with authority to "by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens." 8 U.S.C. § 1229c(e).

The statute grants the Attorney General broad authority to limit, by regulation, the availability of voluntary departure to various classes of aliens. *See, e.g.*, *Dekoladenu v. Gonzales*, 459 F.3d 500, 506 n.5 (4th Cir. 2006) ("The statute does not guarantee voluntary departure even to eligible aliens. Rather it . . . authorizes the Attorney General to issue regulations 'limit[ing] eligibility for voluntary departure . . . for any class or classes of aliens.' As a practical matter, only a relatively

small percentage of removable aliens are granted voluntary departure." (internal citations omitted)); *Cervantes-Ascencio v. INS*, 326 F.3d 83, 86 (2d Cir. 2003) ("Promulgating limits on eligibility for voluntary departure involves broad discretion by the INS, . . . as does granting or denying voluntary departure. This discretionary component not only substantially curtails our review authority, but also precludes entitlement to such relief as a matter of right." (internal citations omitted)).

[19] Although no court has explicitly ruled on the question of whether § 1229c(e) furnishes the Attorney General with the authority he needed to promulgate 8 C.F.R. § 1240.26(i), we think the question is easily answered. Section 1229c(e) authorizes the Attorney General to impose limits for voluntary departure for "*any* class or classes of aliens." The provision does not contain any qualifying language on the Attorney General's authority to limit voluntary departure. Indeed, the remainder of § 1229c only lists express limitations on the Attorney General's authority to *grant* voluntary departure. *See, e.g.*, 8 U.S.C. § 1229c(a)(2)(A) (imposing a general 120 day maximum on voluntary departure deadlines); *id.* §§ 1229c(b)(1)(A)-(D) (imposing four limitations on the classes of aliens eligible for voluntary departure); *id.* § 1229c(c) (prohibiting grants of voluntary departure to aliens inadmissible under § 1182(a)(6)(A)).

[20] Garfias attempts to identify an ambiguity by pointing out that the language of § 1229c(e) only gives the Attorney General authority to "limit eligibility" for grants of voluntary departure, and does not provide him with unlimited authority to determine when those grants should terminate. We do not think this interpretation is sound. 8 C.F.R. § 1240.26(i) may be read as a limitation on voluntary departure for a class of aliens — those who choose to appeal from a decision of the BIA. In light of § 1229c(e)'s broad grant of discretion over voluntary departure, we hold that 8 C.F.R. § 1240.26(i) is a proper exercise of the Attorney General's authority. Because

we resolve this issue at the first step of the *Chevron* analysis, there is no need to inquire further into the reasonableness of the regulation.

## V

We hold that aliens who are inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) may not seek adjustment of status under 8 U.S.C. § 1255(i). Furthermore, we hold that this rule can properly be applied to Garfias. Finally, we hold that 8 U.S.C. § 1229c(e) unambiguously provided the Attorney General with the authority to promulgate 8 C.F.R. § 1240.26(i), and that Garfias's grant of voluntary departure terminated upon his decision to file a petition for review.

PETITION DENIED.